UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JONATHAN USHER,

        Petitioner,                      Case No. 2:14-cv-163

v.                                        Honorable R. Allan Edgar

THOMAS MACKIE,

        Respondent.
_____/

**OPINION**

        This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254.  Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court."  Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243.  If so, the petition must be summarily dismissed.  Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face).  A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false.  *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999).  After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Factual Allegations**

Petitioner is incarcerated in the Baraga Maximum Correctional Facility. On September 24, 2010, Petitioner pleaded guilty in the Wayne County Circuit Court to fleeing a police officer, third-degree, MICH. COMP. LAWS § 257.602a(3)(a). In exchange for his plea, the prosecutor dismissed charges for receiving and concealing stolen property, and resisting and obstructing a police officer. In addition, the prosecutor agreed to recommend a suspended sentence of 1 to 5 years imprisonment and 3 years probation, with the first 5 months to be served at the Wayne County Jail. On October 12, 2010, the trial court sentenced Petitioner in accordance with the agreement.

Petitioner was charged with violating his probation in 2011. Specifically, Petitioner was charged with failing to report once a month, failing to report on February 14 and 17, 2011, failing to notify the probation agent of his change of address, failing to perform 100 hours of community service and failing to enroll in educational programs. Petitioner also tested positive for marijuana on February 3, 2011, but that was not included as a violation.

A probation violation hearing was held on October 28, 2011. Probation Officer Richard Flood testified that, after his release from jail, Petitioner was required to complete a program at the Christian Guidance Center. (Probation Hearing Transcript (PH Tr.) 5-6, docket #16-8, Page ID#158.) Flood met with Petitioner while he was at the Christian Guidance Center and told him to report on the Monday following his release from the Center. (PH Tr. 6, 11-12.) In addition to speaking with him, Flood testified that he gave Petitioner a letter with reporting instructions. (PH Tr. 12.) The Center provided Flood with a release date of November 27, 2010. (PH Tr. 11.) According to Flood, Petitioner failed to report as instructed after his release from the Center. However, Flood was able to "track down" Petitioner and he reported for orientation on January 26,

2011. (PH Tr. 7-8.) At the orientation, Flood informed Petitioner that he was required to report monthly, but Petitioner failed to report in February. After Petitioner failed to report on February 14, Flood attempted to do a home call, but the address Petitioner provided was an empty lot. (PH Tr. 8-9.) Flood also went to the apartment listed as Petitioner's previous address and left a letter. (*Id*.) Petitioner was required to provide a change of address as a condition of his probation. (PH Tr. 9.) Flood further testified that Petitioner did not provide any proof that he completed his community service or enrolled in an educational program, which also were conditions of his probation. (PH Tr. 10, 13.)

Petitioner testified that Flood visited him at the Christian Guidance Center, but Petitioner did not speak with him directly due to patient confidentiality. (PH Tr. 15.) According to Petitioner, Flood only spoke with his counselor, Ms. Newson. (*Id*.) Upon his release from the Center, Petitioner testified that he tried "[t]o find out who was my probation officer cause they didn't have a clue." (PH Tr. 16.) Petitioner attempted to call Mr. Floyd, his previous probation officer, but could not reach him by phone or in person. (*Id*.) Petitioner admitted to the court that he failed to report monthly to his probation officer, as follows:

> Q [The Court]: So did you report at anytime between January and the time you got out of Christian Guidance Center and the time you got picked up on the warrant two weeks ago?
>
> A: No, I was at work, working.

Petitioner testified that he had been working 6 days a week at "home improvement." (PH Tr. 17.) Petitioner also provided the following testimony regarding the educational and community service requirements:

> Q: And regarding your education. are you enrolled?
>
> A: I took the GED class in Christian Guidance Center.

> Q: You did?
>
> A: Yes, I did.
>
> Q: Did you provide documentation to the probation department?
>
> A: They have it. And I did community service. That's in Christian Guidance Center computer, too.
>
> Q: So you're indicating you got your GED and you did your community service while at the Christian Guidance Center?
>
> A: Yes, I suppose to.

(PH Tr. 17-18.)

The trial court found that, while the issues of community service and educational programs were in dispute, the evidence was clear that Petitioner failed to report as directed after January 26, 2011, and moved without notifying the probation officer of a new address. Consequently, the court revoked Petitioner's probation and resentenced him on November 15, 2011, to imprisonment of 1 to 5 years. The Michigan Court of Appeals and the Michigan Supreme Court denied Petitioner's applications for leave to appeal on July 2, 2012, and December 26, 2012, respectively.

Petitioner now raises one ground for corpus relief in his amended petition (docket #28). He contends that his due process rights were violated when the prosecutor failed to establish by a preponderance of the evidence that Petitioner violated the terms of his probation.

## **Standard of Review**

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has

"drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v, Smith*, 135 S. Ct. 1, 4 (2014); *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 132 S. Ct. 38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). The court may grant relief under the "unreasonable application"

clause "if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Id.* at 410. "[R]elief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1706-07 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 784 (2011)).

Where the state appellate court has issued a summary affirmance, it is strongly presumed to have been made on the merits, and a federal court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA. *See Harrington*, 131 S. Ct. at 784; *see also Johnson v. Williams*, 133 S. Ct. 1088, 1094 (2013); *Werth v. Bell*, 692 F.3d 486, 494 (6th Cir. 2012) (applying *Harrington* and holding that a summary denial of leave to appeal by a Michigan appellate court is considered a decision on the merits entitled to AEDPA deference). The presumption, however, is not irrebuttable. *Johnson*, 133 S. Ct. at 1096. Where other circumstances indicate that the state court has not addressed the merits of a claim, the court conducts *de novo* review. *See id.* (recognizing that, among other things, if the state court only decided the issue based on a state standard different from the federal standard, the presumption arguably might be overcome); *see also Harrington*, 131 S. Ct. at 785 (noting that the presumption that the state-court's decision was on the merits "may be overcome when there is reason to think some other explanation for the state court's

decision is more likely"); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question).[1]

## Discussion

Unlike a criminal prosecution, the prosecutor's burden of proof in a probation revocation proceeding is not proof that the defendant violated the terms of his probation "beyond a reasonable doubt," but rather proof "that the defendant violated the terms of his probation by a preponderance of the evidence." *People v. Ison*, 346 N.W.2d 894, 897 (Mich. Ct. App. 1984). Thus, "evidence is sufficient to sustain a conviction of probation violation if, viewed in the light most favorable to the prosecution, it would enable a rational trier of fact to conclude that the essential elements of the charge were proven by a preponderance of the evidence." *Id.* A preponderance of the evidence standard "simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence." *In re Winship*, 397 U.S. 358, 371–372 (1970) (Harlan, J. concurring) (internal quotation marks omitted). *See generally, United States v. Knights*, 534 U.S. 112, 120 (2001) ("probationers have even more of an incentive to conceal their criminal activities and quickly dispose of incriminating evidence than the ordinary criminal because probationers are aware that they may

---

[1] Relying on *Schlup v. Delo*, 513 U.S. 298 (1995), Petitioner argues that he is entitled to *de novo* review of his claim because he is actually innocent of the probation violation charges. Petitioner's reliance on *Schlup* is misplaced. *Schlup* provides a gateway for habeas petitioners to obtain review of a claim that is procedurally defaulted. If a petitioner procedurally defaulted his federal claim in state court, the petitioner must demonstrate cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006). The miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence. *Id.* A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). In this case, Petitioner's claim is not procedurally defaulted; therefore, Petitioner need not invoke the miscarriage-of-justice exception in order for his claim to be considered on the merits. Furthermore, while a petitioner may obtain a merits review of his claim through the miscarriage-of-justice exception, the exception has no bearing on the standard of review applied to the claim. Under the foregoing authorities, the decisions of the state courts in this case are entitled to AEDPA deference.

be subject to supervision and face revocation of probation, and possible incarceration, in proceedings in which the trial rights of a jury and proof beyond a reasonable doubt, among other things, do not apply"); *United States v. Robinson*, 893 F.2d 1244, 1245 (11th Cir. 1990) ("[i]n a probation revocation proceeding, all that is required is that the evidence reasonably satisfy the judge that the conduct of the probationer has not been as good as required by the conditions of probation; evidence that would establish guilt beyond a reasonable doubt is not required").

In this case, Petitioner claims that the trial court relied upon the testimony of Probation Officer Flood in finding that Petitioner violated his probation, rather than relying on Petitioner's testimony to the contrary. Petitioner maintains that he "was unsure of the directions his agent gave him and tried reporting as best he could without a clear understanding of what anyone expected of him and no attempts to clarify those expectations." (Br. in Support of Amend. Pet., docket #29, Page ID#282.) Assessing the credibility of witnesses is exclusively the province of the trier of fact. *Moreland v. Bradshaw*, 699 F.3d 908, 917 (6th Cir. 2012) (the assessment of the credibility of witnesses is generally beyond the scope of habeas review); *Peveler v. United States*, 269 F.3d 693, 702 (6th Cir. 2001) (refusing to second-guess the credibility determination of the magistrate judge, and noting the general reluctance of this court "to set aside credibility determinations made by the trier of fact, who has had the opportunity to view the witness on the stand and assess his demeanor"). Consequently, this Court will not second-guess the trial court's decision to credit Officer Flood's testimony over Petitioner's.

Moreover, the court's decision was supported by the record. Officer Flood testified that he met with Petitioner at the Christian Guidance Center and gave him verbal and written instructions regarding the terms of his probation. (PH Tr. 6, 11-12.) Flood testified that Petitioner initially failed to report following his release from the Center in late November, 2010, but ultimately reported for

orientation on January 26, 2011. (PH Tr. 7-8.) Petitioner, however, failed to report in February after being told by Flood that he had to report monthly. (PH Tr. 8-9.) Petitioner admitted at the probation violation hearing that he did not report after January 26, 2011. (PH Tr. 17.) With regard to the charge for failing to provide a change of address, Officer Flood testified that he went to the address provided by Petitioner and found an empty lot. (PH Tr. 8-9.) Petitioner did not provide any testimony or evidence to the contrary. Officer Flood's testimony clearly was sufficient to establish one or more probation violations by a preponderance of the evidence. Petitioner, therefore, cannot show that the decision of the trial court was an unreasonable application of clearly established Supreme Court precedent.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under

Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.

Dated: 1/20/2015      */s/ R. Allan Edgar*
R. ALLAN EDGAR
UNITED STATES DISTRICT JUDGE